EASTMAN HATHORN, In Equity,

*vs.*

GEORGE W. ROBINSON, Executor, and another.

Somerset.    Opinion December 18, 1903.

*Attachment. Exemptions. Frat. Ben. Assoc. Trustee Process,* Voluntary Appearance. *Poor Debtor,* Disclosure. *Trusts. R. S. (1883), c. 86, §§ 2, 4.    Stat. 1897, c. 320, § 14 ; c. 330, § 9.*

The voluntary appearance, without the statutory service upon him, of one named as trustee in a trustee process does not attach the funds of the principal defendant in his hands.

At a debtor's disclosure before a commissioner, he disclosed having in his pocket money enough to satisfy the judgment. The creditor was entitled to have this money applied to his judgment unless, as claimed by the debtor, it was exempt from seizure upon execution. To obtain an adjudication of the question the parties arranged that the money should be placed in the hands of a third party and trustee writ made in which the creditor should be named as plaintiff, the debtor as defendant and the depository as trustee, and be entered in court, and all the parties appear without service and thus present the question whether the money was exempt. This was done and the court held the money was not exempt. *Hathorn* v. *Robinson,* 96 Maine, 33.

After the death of the principal defendant, the trustee still holding the funds declined to pay them to plaintiff. Thereupon the plaintiff filed this bill against the executor of the defendant and the trustee to determine the status of the fund in question.   *It was held,* by a majority of the court:—

The money was not by these proceedings attached or put in the custody of the law, WISWELL, C. J., STROUT, POWERS, JJ., dissenting.

It having been decided that the money was not exempt from seizure, the creditor was entitled to receive it from the depository under the agreement of the parties.

The death of the debtor and the insolvency of his estate did not affect the right of the creditor to receive the money.

See *Hathorn* v. *Robinson and Trustee,* 96 Maine, 33.

Appeal in equity.    Appeal sustained.

Bill in equity charging that the defendant Walton held a certain fund in trust under a written agreement.

The facts are stated in the opinion.

*Harvey D. Eaton*, for plaintiff.

*S. J. and L. L. Walton*, for defendants.

The defendant Walton took the fund not under a general trust, but only for the purpose of holding it so that service might be made upon him in a trustee process and the fund thereby attached. *Franklin Bank* v. *Bachelder*, 23 Maine, p. 63; *Tyler* v. *Winslow*, 46 Maine, 348.

While the insolvency provisions of law relative to suits pending against estates, in one sense, are not strictly defenses, yet it is a fact, nevertheless, that had the money remained in Robinson's hands up to his death, Hathorn would certainly not have been able to hold it. Why should he now?

We say that Hathorn, as well as Robinson, agreed to submit to the determination of this court, under the statute provisions of a trustee process, the question as to whether that five hundred dollars was liable to attachment, and Hathorn was to use this trustee process, and its machinery, for the attainment of his purpose. By so doing he relinquished all rights he had under his disclosure proceedings and restricted himself to his remedy by trustee suit; that, on account of the death of John Robinson and the insolvency of his estate, such remedy appears now to be inadequate for his purposes, does not change the agreement as the parties then made it.

SITTING: EMERY, WHITEHOUSE, PEABODY, SPEAR, JJ. WISWELL, C. J., STROUT, POWERS, JJ., DISSENTING.

SPEAR, J.  This is a bill in equity, and comes up on appeal, by the plaintiff.  The facts and decree as found below, by the justice in the first instance, are as follows:

"I find that, on the 2nd day of February, 1900, the plaintiff was a judgment creditor of the defendant's testate, John Robinson; that at a disclosure hearing, upon said judgment, before a disclosure commissioner, on the same day, the said John Robinson disclosed that he had about seven hundred dollars in cash in his pocket, but which he claimed could not, under the statutes of this State, be attached or

seized, or in any way applied in payment of the judgment against his will; that the complainant asserted his right to have said money turned over to him, and applied in part satisfaction of said judgment; that thereupon the parties entered into the following written agreement:

"'Skowhegan, Maine, February 2, 1901.

"'It is hereby agreed by and between Eastman Hathorn of Athens and John Robinson of Madison that said Robinson shall deposit in the hands of his attorney S. J. Walton the sum of five hundred dollars which he received as insurance from the United Order of the Golden Cross of the World, a fraternal beneficiary organization, and said Hathorn is to bring suit through his attorney against said Robinson as principal defendant and said Walton as trustee of said fund, said arrangement is made for the purpose of testing said Hathorn's right to said fund and it is understood and agreed that all provisions of law shall be available in defense thereof the same as though said fund had remained in the hands of said Robinson.

"'This agreement grows out of a disclosure process and is to provide for a legal settlement of the questions arising in said process.

John Robinson.
Eastman Hathorn.'

"I further find in pursuance of said agreement, said Robinson did then and there deposit said five hundred dollars with said Walton; that thereupon the complainant caused a trustee process to issue, which declared on said judgment, and in which he was plaintiff, the said Robinson was defendant and the said Walton was named as trustee; that said Robinson and said Walton signed a written acknowledgment of service which was indorsed upon the writ, and that no other service of the writ was made, nor was it ever placed in the hands of an officer for service.

"I further find that after due proceedings had, first at nisi prius, and later in the law court upon the trustee's exceptions, it was ultimately decided by the law court that said Walton should be charged as trustee for the five hundred dollars less his costs, and the defendant's contentions in law were overruled, as appears by the opinion of the court in *Hathorn* v. *Robinson*, 96 Maine, page 33, and by the

mandate of the court therein; and that the order of the law court overruling the trustee's exceptions was received by the clerk of court in Somerset County, where the action was pending, on December 14, 1901.

"I further find that said John Robinson died, testate, on November 14, 1901; that at the December term, 1901, of the Probate Court in Somerset County his estate was duly represented and decreed insolvent, and commissioners were appointed according to law; and at the December term, 1901, of the Supreme Judicial Court in said county, in the said trustee action, the death of John Robinson and the insolvency of his estate was represented.

"Upon these findings of fact, which are all that I deem material in this case, I rule that the sum of five hundred dollars so placed in the hands of S. J. Walton, was not impressed by any general trust but that the purposes of the trust created by the written agreement herein before referred to were fully executed by the said proceedings in said trustee suit, and that said Walton is not now to be holden as trustee of said fund for the benefit of the complainant.

"It is therefore ordered, adjudged and decreed that the bill be dismissed, with a single bill of costs."

Does the above decree give the written agreement the interpretation to which, under all the circumstances of the case, it is entitled? We think not. We think the agreement went even further than the impressing the fund by a general trust for the benefit of the plaintiff. It placed the deposit in the hands of Mr. Walton as the contingent property of the plaintiff dependent upon the decision of the court; if for the plaintiff, it was the property of the plaintiff; if for the defendant, it went back to the defendant.

The defendant's counsel, in his brief, contends that the trustee took the money "only for the purpose of holding it so that service might be made upon him in a trustee process and the fund thereby attached." We cannot agree with him. The trustee process, instead of consummating the purposes of the agreement, was the means mutually adopted by the parties for determining its purposes. The procedure was simply an arrangement as the use of the word "arrangement" in the agreement clearly shows. The form of proc-

ess was of no consequence to the parties. They were seeking to reach a result. There was also nothing technical about the procedure. The trustee was mutually agreed upon. The money to be attached was voluntarily placed in his hands. Service of the writ was accepted by both the defendant and trustee. The deposit was made for the express purpose of being applied to the payment of the plaintiff's judgment, if it was not exempt. Nothing else, as the case shows, was contemplated by the act of deposit. From these voluntary acts of the parties, it is clearly evident that the only purpose of the "arrangement" or procedure, was to enable the defendant to obtain the decision of the court upon his contention.

Up to this point all the formalities and technicalities necessary to authorize the entry of the case in court were waived by mutual consent, and it hardly seems probable that the parties understood or intended that the plaintiff, upon decision in his favor, should be obliged to pursue, to obtain possession of the money, "proceedings thereafter according to statute provisions." There was no reason why such proceedings should follow. The parties had no contention over the process. The charging the trustee with the money in his hands, was merely the legal formality required, by this particular process, to give effect to the decision of the court. We do not, therefore, think that the purposes of the trust, created by the written agreement, were fully executed by the process in the trustee suit, except that the opinion of the court, at the end of this process fixed the status of the fund. When that opinion was recorded, the contingency upon which the plaintiff's title was to vest or fail happened, and the defendant was thereby divested of, and the plaintiff vested with, the title to the deposit. No further acts on the part of the plaintiff or the defendant seemed, in any particular, to be necessary to accomplish this end.

The defendant's counsel contends that the clause "All provisions of law shall be available in defense the same as though said fund had remained in said Robinson's hands," secured to the defendant the statutory defenses available at every stage of trustee process. Technically the language of the clause precludes such a construction. For the purpose of defining the defenses contemplated, the clause

assumes that the money shall remain in the hands of the principal defendant, a case in which trustee process will not lie at all; but "the provisions of law available in defense" could not have been intended to apply to a case that could not exist, hence the defenses available at the various stages of trustee process could not have been intended by the clause. Such defense was not contemplated. The clause was clearly intended to protect the defendant against any prejudice by reason of surrendering his money to the hands of a third party, and to secure to him all the advantages of the defense raised by him, as if the suit had been directly against him without preference to trustee process. As the law looks to the substance and not the form, and does not require the observance of useless formalities, we think the plaintiff was not required to pursue the statute provisions of trustee process in order to maintain his lien on the property in the hands of the trustee, after the trustee was charged. In this case the rights of the plaintiff did not depend upon the attachment or lien, but upon the final decision of the court, the attachment being merely the "arrangement" agreed upon to obtain such decision. And it must have been so understood by the parties, because, as a matter of law, the plaintiff, by virtue of the process agreed upon, had no valid attachment or lien upon the deposit. An attachment by common law garnishment or trustee process, as it is called under our statute, cannot be created by consent.—"Garnishment rests wholly upon judicial process and depends upon the due pursuit of the steps prescribed by law for its prosecution. It can borrow no aid from the volunteered acts of the garnishee. Such acts will be regarded as void so far as they interfere with the rights of third persons." *Insurance Company* v. *Friedman Bros.*, 74 Texas, 56; Drake on Att. 451, b; Wade on Att. 336.

We think the familiar rule of law, applicable to the construction of written contracts, fully warrants the interpretation above given to the written agreement now under consideration. In *Merrill* v. *Gore*, 29 Maine, page 348, the court say:—"To ascertain the true construction of a written contract, the situation of the parties, the acts to be performed under it, and the time, place, and the manner of performance may be considered. The intention of the parties is to be

ascertained by an examination of the whole instrument and of its effect upon any proposed construction, and such a construction should be adopted as will carry that intention into effect, although a single clause alone considered would lead to a different construction."

And the instrument may be read in the light of surrounding circumstances, says Judge WALTON, *Snow* v. *Pressey*, 85 Maine, page 417.

Applying this familiar rule to the agreement before us, we inquire first, what was the intention of the parties to this agreement with reference to the status of the money deposited and second, will the terms of the agreement warrant a construction that will carry that intention into effect?

Taking into consideration the situation of the parties and reading the agreement "in the light of the surrounding circumstances," the case before us shows the following facts:—The defendant had disclosed, in his immediate possession, much more than the amount of the plaintiff's execution. Of the sum disclosed, the plaintiff claimed an amount sufficient to pay his execution, by virtue of § 9, c. 330, Public Laws of 1897, as amended, which says: "When from such disclosure it appears that the debtor possesses, or has under his control, any bank bills, &c., which cannot be come at to be attached, and the petitioner and debtor cannot agree to apply the same toward the debt, the magistrate, hearing the disclosure, shall appraise and set off enough of such property to satisfy the debt, costs and charges; and the petitioner or his attorney, if present, may select the property to be appraised." The plaintiff, by virtue of this statute, having acquired the right to this set-off claimed, as conceded by the acts of the defendant, there was, up to this point, no avoidance of his right to the money, or legal defense to it. If nothing further had been done, the plaintiff would have received the money. The question of appraisal was waived, as shown by the deposit.

But at this juncture of the disclosure, although conceding all the plaintiff's claims under the disclosure statute, the defendant set up an alleged defense, entirely new and distinct from anything contained in the disclosure statute, or the disclosure proceedings, namely, exemption of the money disclosed under § 14, c. 320, Public Laws of 1897.

And it should be noted that this was the only defense claimed. The plaintiff was not, however, obliged to surrender his rights acquired under the disclosure statute to enable the defendant to make this defense. It was only by his consent that the defendant could be relieved from the operation of the statute. Therefore, by request of the defendant and the consent of the plaintiff, the new procedure, under the agreement, was instituted for the express purpose of affording the defendant an opportunity to present his defense to the determination of the court.

This, then, was the situation of the parties when they approached the agreement now under consideration. The agreement was the outgrowth of this situation. What was the intention of the parties with reference to the deposit? The very first provision in the agreement was that the defendant should deposit $500. In other words, "set-off" this amount for the contingent purpose of paying the plaintiff's judgment. Can there be any doubt that this was intended, by the defendant, to take the place of the set-off contemplated by the statute, "to satisfy the debt, costs and charges" in accordance with section 9, chapter 330, supra? The disclosure, and all the proceedings, up to the time of making the agreement, were under this statute. It provided for a set-off of money or other property disclosed, and it is clearly evident that both parties intended the deposit to be a substitute for the set-off required by statute, and by agreement they put it in the form of a deposit to await the decision of the court. It was the conditional or contingent property of the plaintiff.

The point of the agreement is found in the clause "said arrangement is made for the purpose of testing said Hathorn's right to said fund, etc." "Right" is defined in law as "an enforceable claim or title to any subject matter whatever;" by Webster as "a legal claim, ownership, property." From the attitude of the defendant toward the deposit, as shown by his own contention, it is perfectly clear that he intended the word "right," as used in the agreement, to be synonymous with the word "ownership."

As before shown, the plaintiff claimed a sufficient amount of the money disclosed to pay his execution. The defendant did not deny the plaintiff's claim. He admitted it was valid under the statute.

In other words he said to the plaintiff, if the money is not exempt it is yours.    Exemption was the only defense claimed as the opinion of the court, in *Hathorn* v. *Robinson*, 96 Maine, page 33, clearly shows.    The chief justice in stating the defendant's position says :

"But it was claimed by the debtor that this money could not be seized or taken in any way, and applied to the payment of the execution, because it had been received by him, as a beneficiary, under an insurance policy, issued by a fraternal beneficiary organization, known as the United Order of the Golden Cross of the World, authorized to do business in this State under chapter 320 of the Public Laws of 1897 ; and that money so received was exempt from attachment or seizure on execution by reason of the provisions of that chapter."    Thus it clearly appears from the opinion of the court, that the only defense set up was exemption, and the only contention between the parties the ownership of the deposit, contingent upon the finding of the court.    The defendant did not pretend to claim it himself; he set it apart for the plaintiff, if not exempt; no other party was in the least interested in it, or claimed it; no other claim was, at the date of the agreement, pending against him. Therefore, considering "the situation of the parties, the acts to be performed under it, and the time, place and manner of performance," and reading the agreement, "in the light of surrounding circumstances," it seems clear that it was the intention of the parties to the agreement that the contingent ownership of the deposit should become absolute in the one, in whose favor the opinion was rendered.

Will the terms of the agreement warrant the above construction intended by the parties?    We think they will.

The agreement, after reciting the facts with reference to the deposit of the fund, expressly says, "said arrangement is made for the purpose of testing said Hathorn's right to said fund."    What right?    Clearly the right acquired by virtue of the disclosure.    And this right is also conceded by the express terms of the agreement, because Hathorn's "right" could not be tested unless he first had the right to test.    The defendant, for the purpose of making this test, agrees that the plaintiff has a right to said fund, and then, in the manner agreed upon, undertakes to defeat it.    If he cannot

defeat it, the plaintiff's right continues unaffected by the proceedings employed to test it. The term right as used in the agreement is equivalent to the word "ownership." By the act of deposit the money had gone from the absolute ownership of Robinson to the contingent ownership of Hathorn which was made absolute by the decision of the court.

This interpretation of the contract also secures to each party the very object of his contention; to the plaintiff the $500, to obtain which he cited the defendant to disclose; to the defendant the full opportunity to present his defense and protect his property. His object was to protect it for himself, not for his creditors. If it was to go, it made no financial difference to the defendant to whom.

Under the circumstances of this case, we think the plaintiff, by the written agreement, acquired a right in the deposit of $500 which a court of equity ought to protect.

*Bill sustained. Decree below reversed with costs.*

*Decree to be made in accordance with this opinion.*

---

WISWELL, C. J., STROUT, POWERS, JJ., DISSENTING.

WISWELL, C. J. I am unable to agree with the opinion concurred in by a majority of the sitting members of the court, the justice who ruled being, upon that account, disqualified.

The question whether the sum of money which was deposited by Robinson with the defendant, Walton, was simply deposited as the property of the former, so as to be subjected to attachment upon trustee process, or was in any way impressed with a trust in favor of the complainant, depends upon the construction of the agreement made by Robinson and Hathorn on Feb. 2, 1901. It seems to me that that agreement, in the light of the surrounding circumstances plainly shows that this sum of money was deposited in the hands of Mr. Walton as the property of Robinson, so that Walton thereby became the trustee of Robinson, and liable to be held as such upon trustee process; and that he did not hold this property as trustee for Hathorn under any circumstances or contingencies. And further

that, if the agreement of the parties admitted of any doubt upon this question, the contemporaneous conduct of the parties and their counsel shows beyond all question that they so intended and understood the effect of this agreement.

The complainant was a judgment creditor of Robinson; on February 2, 1901, the latter was before a disclosure commissioner at the summons of the complainant to make a disclosure; the debtor disclosed a considerable sum of money in his possession, more than sufficient to satisfy the creditor's judgment, but claimed that this money was exempt from attachment and seizure under the Public Laws of 1897, chap. 320, § 14, the money having been received by him as a beneficiary under an insurance policy issued by a fraternal beneficiary association. The creditor, upon the other hand, claimed that this money was not exempt from seizure under the statute. The parties were then before a tribunal which was authorized and was bound to decide this question, however serious and difficult a one it may have been. The complainant was entitled to have the question decided in one way or the other by the commissioner. If decided in favor of the creditor's contention, it was the duty of the commissioner to appraise and set off the money to the creditor, and upon its delivery to him by the debtor, and not until then, he would have acquired title to it. Stat. 1897, c. 330, § 9. But the creditor although entitled to a decision, and, in fact, entitled to a decision in his favor, as decided by this court in *Hathorn* v. *Robinson,* 96 Maine, 33, abandoned this proceeding and entered into an agreement with the debtor whereby the question might be decided in another way and upon an entirely different proceeding. By reason of this abandonment the commissioner did not decide the question, the money was not appraised, set-off, or delivered to the plaintiff. He acquired neither title to nor lien upon it under the disclosure proceedings, but voluntarily entered upon another method of procedure, the commencement of a trustee process to obtain the funds. Certainly up to this time this money had not become the property of the judgment creditor, the only question so far being whether or not it could be taken as the property of the judgment debtor to satisfy the claim of the creditor. But it was not taken, and, as we have seen, the pro-

ceedings before the commissioner were abandoned. The parties then made the agreement, which is quoted in full in the majority opinion of the court, wherein it was provided that Robinson should deposit the sum of $500 in the hands of his attorney, Walton, "and said Hathorn is to bring suit through his attorney against said Robinson as principal defendant and said Walton as trustee of said fund." To me it does not seem possible that there can be any doubt as to the intention of the counsel who, presumedly, drafted this agreement, as to the character of this fund, as to whose property it was, and as to whom Walton was trustee for, when this language was used, and the principal and controlling object of the agreement was that a trustee process might be commenced to hold this fund in the possession of Walton as trustee for Robinson, the debtor, provided that it was not exempt from attachment. It is elementary that the purpose of a trustee process is to make an attachment of the property of the principal defendant in the hands of a trustee of the principal defendant;— it is so provided by statute, R. S. 1883, c. 86, § 2. Again, it is provided in sec. 4 of the same chapter, that the service of the trustee writ on the trustee "binds all goods, effects or credits of the principal defendant entrusted to and deposited in his possession." The purpose of the trustee process being then to attach the property of the principal defendant in the possession of the trustee, must not the parties and their counsel have known, when this agreement was made for the sole purpose of having property of the principal defendant in the hands of the trustee that could be attached, that that was the principal defendant's property, placed there that it might be subjected to attachment by this process? Unless this money was the property of the principal defendant, it could not be attached in a common law action against the principal defendant and an alleged trustee. A plaintiff cannot obtain in such an action his own property in the hands and possession of a person who is alleged to be trustee for another.

That the counsel so intended and understood the effect of this agreement is shown by the fact that immediately after this money was deposited, the plaintiff commenced a common law action of debt upon his judgment, and attached this money as the property of the

defendant in the hands of Walton, the trustee for the defendant. That common law action was entered in court and prosecuted, no objection being made by the trustee or the principal defendant as to the maintenance of this trustee process; the court at nisi prius held that the trustee was chargeable; and this ruling, after being reviewed upon exceptions by the law court, was sustained. The result in that case necessarily involved the decision of two questions, first, as to whether or not this money was attachable under the statute of exemption above referred to, and second, a question, which, to be sure, was not discussed in the opinion, because conceded by counsel, whether or not this money was the property of the principal defendant in the hands of the alleged trustee, who held it as trustee for the principal defendant and for nobody else.

That this fund was not placed in the hands of Mr. Walton as trustee for the complainant, seems to me clear for the reasons already given, and, to my mind, that conclusion is strengthened by further analysis of the agreement in writing. That agreement contains this provision, "said arrangement is made for the purpose of testing said Hathorn's right to said fund, and it is understood and agreed that all provisions of law shall be available in defense thereof the same as though said fund had remained in the hands of said Robinson." But what right of Hathorn's to this fund was to be tested in the manner provided for by the agreement? Certainly not his right as owner of the fund, because this he did not claim, his only claim was a right to seize or attach the fund as the property of the defendant in satisfaction of his judgment; and the sole question that was to be determined by the court in the suit to be commenced, was as to his right to take this fund as the property of the defendant to satisfy his judgment. Again, what is meant by the clause "that all provisions of law shall be available in defense thereof the same as though said fund had remained in the hands of said Robinson?" Does it not show that the question to be determined was whether or not this money was subject to seizure or attachment as the property of the debtor, Robinson? This was the question argued and decided by the court in that case. 96 Maine, 33. The decision of the court was necessarily that it was the property of the defendant, else the alleged

trustee would not have been charged, and also that it was not exempt under the statute relied upon.     That this money was the property of the debtor, and that it was not exempt from attachment was, and must have been, the contention of the plaintiff's counsel in the commencement, prosecution and argument of that case.

Before Robinson's death, the complainant and his attorney, as well as the adverse party and the court, all acted upon the theory that Walton was trustee for Robinson and chargeable as such upon trustee process.     After Robinson's death, the whole theory of the complainant is changed and he now contends, in effect, that Walton was not the trustee of Robinson but was trustee for his client, the complainant, and that contention is sustained by a majority of the court.     No principle of the law is better established, or is more sound in principle, than that no suitor shall be allowed to invoke the aid of the courts upon contradictory principles of redress, upon one and the same state of facts.     That doctrine has been recently asserted by this court in *Hussey* v. *Bryant,* 95 Maine, 49.     But in the present case the facts are identical in all respects with those of the common law action brought by the present complainant.     In that action the plaintiff suitor claimed that Walton should be charged as the trustee of Robinson, and was successful in his contention, having obtained a final judgment of this court in his favor.     In this case the same suitor, under the same facts seeks another and entirely inconsistent remedy.     It seems to me that if there were any question as to the construction of the agreement of Feb. 2, 1901, this election by this complainant of his remedy by common law action and trustee process, acquiesced in by the adverse party, and brought to a successful termination for the plaintiff, ought to prevent his maintenance of this bill in which he seeks a remedy absolutely inconsistent with that of the former action.

Suppose Robinson had lived, is it conceivable, after the court had held that the trustee was chargeable because he had this money of the principal defendant in his hands, and after judgment had been entered, "trustee charged, etc." that this court would have then held that it was unnecessary for the creditor to perfect his foreign attachment by proceedings under the statute; and, notwithstanding the

fact, that the parties had already proceeded upon the theory that Walton was the trustee of Robinson, and the court had so decided, that in fact Walton did not hold this money as trustee for Robinson, but as trustee for Hathorn? And yet that such would be the decision of the court, is, it seems to me, the necessary result of the conclusion of the majority opinion; but Robinson's death in no way affected the question under consideration. It was a contingency which evidently was not contemplated by the parties at the time this agreement was made, and thereby the foreign attachment by trustee process was dissolved.

For these reasons, I am unable to concur with the majority opinion, and believe that the ruling of the presiding justice at nisi prius was correct.